USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/12/14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

MARCIA GOLDSON,

              Plaintiff,

     - against -

KRAL, CLERKIN, REDMOND, RYAN, PERRY
& VAN ETTEN, LLP,

              Defendant.

------------------------------------------------------------------x

**REPORT AND RECOMMENDATION TO THE HONORABLE GEORGE B. DANIELS**

13 Civ. 2747 (GBD) (FM)

**FRANK MAAS**, United States Magistrate Judge.

     Pro se plaintiff Marcia Goldson ("Goldson"), a former paralegal, brings this employment discrimination suit against Kral, Clerkin, Redmond, Ryan, Perry & Van Etten, LLP, ("Kral Clerkin" or "Defendant"), a New York law firm where she once worked. In her Amended Complaint ("Am. Compl."), Goldson alleges that Kral Clerkin discriminated against her and ultimately terminated her in violation of Title VII of the Civil Rights Act ("Title VII"), the Age Discrimination in Employment Act of 1967, the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL"). (Am. Compl. at 1). Kral Clerkin has moved to dismiss the Amended Complaint, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), alleging that Goldson lacks standing to bring her claims because she failed to disclose them in her bankruptcy proceeding and is barred from pursuing them by the doctrine of judicial

estoppel. (ECF No. 24). Additionally, the Defendant argues that the Court lacks subject matter jurisdiction to decide Goldson's state law claims pursuant to the doctrine of election of remedies. For the reasons set forth below, the Defendant's motion to dismiss should be granted, but the trustee of Goldson's bankruptcy estate should be afforded ninety days to restore the federal claims should he wish to pursue them.

I. <u>Background</u>

Kral Clerkin employed Goldson as a paralegal from March 2003 to January 22, 2013. (Am. Compl. at 2-3; ECF No. 26 ("Def.'s Mem.") at 2).

On January 20, 2011, Goldson filed a bankruptcy petition under Chapter 13 in the Bankruptcy Court in the Middle District of Pennsylvania. (<u>In re Goldson</u>, No. 5:11-bk-00359 (RNO), ECF No. 1).[1] On September 30, 2011, that court entered an order confirming Goldson's amended Chapter 13 plan. (<u>In re Goldson</u>, ECF No. 81).

In April 2012, Goldson filed a verified complaint with the New York State Division of Human Rights (the "Division"), alleging that she had experienced discrimination in violation of Title VII and the NYSHRL during her employment with Kral Clerkin. (Am. Compl. Attach.; ECF No. 25 (Decl. of Kevin R. Brady, Esq., dated Sept. 20, 2013 ("Brady Decl."), Ex. A). Many of the incidents she described occurred in 2011 and 2012, but others dated back as far as the commencement of her employment

---

[1] Under Federal Rule of Evidence 201, the Court may "take judicial notice of documents filed in other courts, . . . not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." <u>Kramer v. Time Warner Inc.</u>, 937 F.2d 767, 774 (2d Cir. 1991).

with Kral Clerkin in 2003.[2] (See Am. Compl. Attach. at 18, 19, 24). The Division issued a Determination and Order After Investigation on October 24, 2012, finding no probable cause to believe that the Defendant had engaged in the discriminatory actions alleged. (Am. Compl. at 4; Brady Decl., Ex. B).

The following month, the bankruptcy trustee moved to dismiss Goldson's bankruptcy petition based on Goldson's failure to provide him with a copy of her federal tax return. (In re Goldson, ECF No. 95). On December 18, 2012, the court held a hearing regarding this motion. (Id., ECF No. 96). The docket indicates that after Agatha R. McHale, Esq., appeared at the hearing, the trustee withdrew his motion to dismiss in open court.

Goldson's employment with Kral Clerkin ended on January 22, 2013. (Am. Compl. at 4). Thereafter, on February 1, 2013, the EEOC issued a Notice of Right to Sue letter stemming from Goldson's 2012 discrimination claims. (Brady Decl., Ex. D at 5). Rather than filing suit at that time, Goldson filed a second Charge of Discrimination with the EEOC on April 3, 2013. The new charge alleged that, in addition to suffering discrimination, Goldson had been wrongfully terminated in retaliation for the filing of her first complaint. (See Brady Decl., Ex. C).

On April 22, 2013, Goldson initiated this lawsuit by filing her Complaint. (ECF No. 2). On July 24, 2013, Goldson filed her Amended Complaint. (ECF No. 18).

---

[2] The substance of Goldson's claims is not relevant to the motion to dismiss, and therefore is not discussed in any detail in this Report and Recommendation.

On August 23, 2013, the Defendant wrote to the Court seeking a pre-motion conference in anticipation of filing a motion to dismiss, based on its recent discovery that Goldson had filed a bankruptcy petition. I waived the pre-motion conference requirement, after which the Defendant filed its motion on September 20, 2013. (ECF Nos. 23-26). Goldson then filed her affirmation in opposition on October 18, 2013, (ECF No. 27 (Affirm. of Marcia Goldson, dated Oct. 18, 2013 ("Goldson Affirm."))), and the Defendant replied on November 1, 2013, (ECF Nos. 29-30).

Even before the motion was filed, on September 6, 2013, Goldson wrote a letter to the bankruptcy trustee, informing him of this federal case. After the trustee requested a copy of the complaint by letter dated September 11, 2013, Goldson sent him copies of the original complaint and Amended Complaint on September 18, 2013. (Goldson Affirm., Exs. I-K).

II. Standard of Review

    A. Rule 12(b)(1)

Under Rule 12(b)(1), a complaint must be dismissed if a court lacks subject matter jurisdiction over the action. In deciding a Rule 12(b)(1) motion, the Court is not limited to the face of the complaint and may consider evidence outside the pleadings to resolve disputed factual issues. State Emps. Bargaining Agent Coal. v. Rowland, 494 F.3d 71, 77 n.4 (2d Cir. 2007); Phifer v. City of N.Y., 289 F.3d 49, 55 (2d Cir. 2002). The plaintiff has the burden of proving that subject matter jurisdiction exists by a

preponderance of the evidence. Phifer, 289 F.3d at 55 (citing Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)).

B.    Rule 12(b)(6)

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must dismiss a complaint that fails to state a claim upon which relief can be granted. A motion to dismiss pursuant to this Rule can raise the defense of judicial estoppel. Evercrete Corp. v. H-Cap Ltd., 429 F. Supp. 2d 612, 620 (S.D.N.Y. 2006). In deciding a motion under this Rule, the Court must accept as true all factual allegations made in a complaint and draw all reasonable inferences in favor of the plaintiff. Allaire Corp. v. Okumus, 433 F.3d 248, 249-50 (2d Cir. 2006). A complaint need not contain "detailed factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Nonetheless, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

To survive a Rule 12(b)(6) motion, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). Determining whether the allegations of a complaint nudge a plaintiff's claims across the line from merely "conceivable to plausible" requires the Court to "draw on its judicial experience and common sense." Id. at 679-80. In making its assessment, the Court may consider, in addition to a plaintiff's factual averments, any written instrument upon which the plaintiff necessarily relies,

5

regardless of whether it is attached to the complaint or incorporated therein by reference. Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002). When a plaintiff is proceeding pro se, the Court also may rely on any opposition papers in assessing the legal sufficiency of the plaintiff's claims. See Crum v. Dodrill, 562 F. Supp. 2d 366, 374 n.13 (N.D.N.Y. 2008) (citing Gadson v. Goord, No. 96 Civ. 7544 (SS), 1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov. 17, 1997)). Furthermore, the Court may take judicial notice of indisputable facts, including documents filed in other courts. See Fed. R. Evid. 201; Burberry Ltd. v. Horowitz, 534 F. App'x. 41, 46 n.2 (2d Cir. 2013); Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004). Legal conclusions masquerading as factual averments, however, may not be taken into account. Twombly, 550 U.S. at 555.

The Court must read pro se pleadings "liberally" and interpret them "to raise the strongest arguments" that they may suggest. Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (quoting Harris v. City of N.Y., 607 F.3d 18, 24 (2d Cir. 2010)). "Dismissal of a pro se complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." Carvel v. Ross, No. 09 Civ. 722 (LAK) (JCF), 2011 WL 856283, at *8 (S.D.N.Y. Feb. 16, 2011).

III. Discussion

When a court is faced with a motion to dismiss pursuant to both rules, it should "decide the 'jurisdictional question [under Rule 12(b)(1)] first because a disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an

exercise of jurisdiction.'" Tirone v. N.Y. Stock Exch., Inc., No. 05 Civ. 8703 (WHP), 2007 WL 2164064, at *3 (S.D.N.Y. July 27, 2007) (quoting Magee v. Nassau Cnty. Med. Ctr., 27 F. Supp. 2d 154, 158 (E.D.N.Y. 1998)). Accordingly, I will turn first to the issue of standing under Rule 12(b)(1).

A.   Standing

The Defendant claims that Goldson lacks standing to pursue this lawsuit because she failed to disclose the claims at issue properly in her bankruptcy proceeding. Goldson argues that the wording of the confirmation order in her bankruptcy case precluded her from amending the schedule of her assets that she previously had filed, and that she did alert the trustee to the existence of those claims by letter dated September 6, 2013, thereby discharging her duty of disclosure.

When a debtor files a bankruptcy petition under Chapter 13, "all legal or equitable interests of the debtor in property as of the commencement of the case" become property of the bankruptcy estate. 11 U.S.C. § 541. The scope of the bankruptcy estate is broad, encompassing "[e]very conceivable interest of the debtor," whether the interest be "future, nonpossessory, contingent, speculative, [or] derivative." Chartschlaa v. Nationwide Mut. Ins. Co., 538 F.3d 116, 122 (2d Cir. 2008) (quoting In re Yonikus, 996 F.2d 866, 869 (7th Cir. 1993)). Thus, "causes of action owned by the debtor" constitute property of the estate. Id. A cause of action need not be well-defined. Accordingly, a "debtor need not know all the facts or even the legal basis for the cause of action; rather, if the debtor has enough information . . . to suggest that it may have a possible cause of

7

action, then that is a 'known' cause of action such that it must be disclosed." In re Coastal Plains, Inc., 179 F.3d 197, 208 (5th Cir. 1999) (quoting Youngblood Grp. v. Lufkin Fed. Sav. and Loan Ass'n, 932 F. Supp. 859, 867 (E.D. Tex. 1996)). Under Chapter 13, even property "that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted" becomes property of the estate. 11 U.S.C. § 1306; see also In re Furguson, 263 B.R. 28, 34 (N.D.N.Y. 2001) ("It has been held that post-petition causes of action accruing to a debtor and the proceeds derived therefrom are property of the Chapter 13 estate if acquired prior to such time as the case is closed, dismissed or converted.").[3]

The efficient administration of the bankruptcy system depends on bankruptcy courts, trustees, and creditors all having full and complete information regarding the assets and liabilities of debtors. Debtors therefore have the affirmative and ongoing duty to disclose all of their assets to the bankruptcy court. See 11 U.S.C. § 521; Robinson v. Tyson Foods, Inc., 595 F.3d 1269, 1274 (11th Cir. 2010). This disclosure obligation must be discharged in writing through the "filing of schedules and other statements." Ibok v. Siac-Sector Inc., No. 05 Civ. 6584 (GBD) (GWG), 2011 WL

---

[3] Some courts have noted a tension between Section 1306, which vests property in a debtor only after the case is "closed, dismissed or converted," and Section 1327(b), "which states that '[e]xcept as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.'" In re Furguson, 263 B.R. 28, 34 (N.D.N.Y. 2001) (emphasis added). Here, however, there is no such tension because Goldson's bankruptcy plan expressly provides that "[p]roperty of the estate will vest in the Debtor upon closing of the case." (In re Goldson, ECF No. 65 ¶ 6 (emphasis added)). Consequently, although Goldson's plan has been confirmed, the property of the bankruptcy estate remains with the estate because the case is not closed.

293757, at *4 (S.D.N.Y. Feb. 2, 2011). If property is properly disclosed and scheduled, but remains unadministered at the close of the bankruptcy case, it is deemed abandoned by the trustee and returns to the debtor. Kassner v. 2nd Ave. Delicatessen Inc., No. 04 Civ. 7274 (GBD), 2005 WL 1018187, at *3 (S.D.N.Y. Apr. 29, 2005)). The trustee, however, cannot abandon property without providing notice to the petitioner's creditors. See Seward v. Devine, 888 F.2d 957, 963 (2d Cir. 1989) ("[I]f . . . the trustee abandoned the claims without affording the . . . creditors notice or an opportunity to be heard . . . then the abandonment was not effected properly."). Undisclosed, unscheduled assets therefore "automatically remain property of the estate after the case is closed." Chartschlaa, 538 F.3d at 122.

As Your Honor has noted, a bankruptcy case is closed only after the estate is fully administered and the bankruptcy court has discharged the trustee. Kassner, 2005 WL 1018187, at *4. While the case remains open, the debtor lacks standing to pursue any claim that is part of the bankruptcy estate. Id. at *3. Moreover, even after a bankruptcy case has closed, the debtor continues to lack standing to pursue any claim not abandoned by the estate. Ibok, 2011 WL 293757, at *4 (citing Coffaro v. Crespo, 721 F. Supp. 2d 141, 148 (E.D.N.Y. 2010); Kassner, 2005 WL 1018187, at *3). Normally, if a plaintiff lacks standing to pursue such a claim, the case must be dismissed. See Ibok, 2011 WL 293757, at *4. In this Circuit, however, courts have found that "it is generally preferable to permit the bankruptcy trustee to be substituted, as the named plaintiff, in place of the debtor," particularly when the bankruptcy case remains open. Kassner, 2005

9

WL 1018187, at *4 (citing Kohlbrenner v. Victor Belata Belting Co., No. 94 Civ. 0915E(H), 1998 WL 328639, at *2 (W.D.N.Y. June 3, 1998)); see also Ayazi v. N.Y.C. Bd. of Educ., 315 F. App'x 313, 315 (2d Cir. 2009) (allowing trustee to adopt claim frees it from "bankruptcy limbo" and defendant is not prejudiced because it has no right to avoid a valid claim "simply because the claim might belong to the bankruptcy estate rather than to" the plaintiff).

The claims asserted in the instant action clearly are property of Goldson's bankruptcy estate. Indeed, the full extent of those claims became "known" to Goldson, at the very latest, when her employment was terminated on January 22, 2013. Under Section 1306 she therefore acquired the claims while her bankruptcy case remained open, and had a duty to disclose them by amending her schedule of assets.

Goldson argues that she was powerless to do so in this case because the Bankruptcy Court's confirmation order precluded amendment of her Chapter 13 plan. The order in fact states that "any modification or avoidance of a lien in connection with confirmation of the plan will not be effective until the earlier of the entry of the Chapter 13 Trustee's certification that all payments under the plan have been made or the claim is paid in full under applicable non-bankruptcy law." (Goldson Affirm. Ex. C at 2) (emphasis added). Although Goldson reads this as a prohibition on any modification of the plan, the term "modification" does not refer to changes to the plan, but to modifications of a lien, an entirely distinct concept. Compare 11 U.S.C. § 1322(b)(2) (Chapter 13 plan may "modify the rights of holders of secured claims, other than a claim

10

secured only by a security interest in real property that is the debtor's principal residence"), with Fed. R. Bankr. P. 1009(a) ("A voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed."), and 11 U.S.C. § 1329(a) ("At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor."); see also Nobelman v. Am. Sav. Bank, 508 U.S. 324, 327 (1993) (discussing modification of rights of secured and unsecured creditors). Indeed, Goldson herself recognizes that modification of the plan is expressly authorized by the bankruptcy statute. (See Goldson Affirm. at 5 (citing 11 U.S.C. § 1329)). Nothing in the text of the confirmation order suggests that the Bankruptcy Court intended anything other than to maintain the status quo regarding the rights of lienholders until completion of the case.

Goldson's contention that she discharged her duty of disclosure by sending the trustee copies of her original complaint and Amended Complaint is equally unavailing. Because Goldson's creditors have never been afforded notice and an opportunity to be heard as to the claims asserted herein (for example, through the formal scheduling of those claims), the trustee cannot have abandoned them. See Seward, 888 F.2d at 963. They therefore remain property of the bankruptcy estate.

For these reasons, Goldson lacks standing to pursue her claims. However, unlike the plaintiffs in the cases relied on by the Defendant, Goldson's bankruptcy case remains open, and her Chapter 13 plan can still be amended without a petition to re-open it. Accordingly, the trustee should be given the opportunity to assess the claims and

determine whether to pursue them on behalf of Goldson's creditors. To permit that to occur, rather than dismissing the Amended Complaint with prejudice, the dismissal should be without prejudice, and the trustee should be granted ninety days to restore the case to pursue Goldson's claims if he wishes to do so.

B.     Judicial Estoppel

The Defendant argues that, even if Goldson had standing, the doctrine of judicial estoppel would bar her claims. Although Goldson's lack of standing seems clear, I will address this alternative basis for dismissal in case Your Honor disagrees with my analysis regarding the jurisdictional question.

Judicial estoppel is a discretionary remedy intended to prevent a party from making inconsistent claims in different proceedings, thereby undermining the integrity of the justice system. An adversary "invoking judicial estoppel must show that (1) the party against whom the estoppel is asserted took an inconsistent position in a prior proceeding and (2) that position was adopted by the first tribunal in some manner, such as by rendering a favorable judgment." Mitchell v. Washingtonville Cent. Sch. Dist., 190 F.3d 1, 6 (2d Cir. 1999) (internal citations omitted). For judicial estoppel to apply, there must be "a true inconsistency between the statements in the two proceedings." Simon v. Safelite Glass Corp., 128 F.3d 68, 72-73 (2d Cir. 1997). Application of the doctrine "should be limited 'to situations where the risk of inconsistent results with its impact on judicial integrity is certain.'" Amash v. Home Depot U.S.A., Inc., 503 B.R. 232, 236 (N.D.N.Y. 2013) (quoting Simon, 128 F.3d at 72)). Judicial estoppel commonly is

applied to bar debtors from later pursuing undisclosed legal claims, on the theory that a failure to disclose amounts to a statement that no claim exists. See, e.g., Robinson, 595 F.3d at 1275; Coffaro, 721 F. Supp. 2d at 145.

Judicial estoppel is not appropriate when a party's inconsistency is the result of a good faith mistake or an inadvertent error. Coffaro, 721 F. Supp. 2d at 145 (citing Simon, 128 F.3d at 72). Although the Second Circuit has yet to rule directly on this issue in the bankruptcy context, other circuits have held that nondisclosure should only be considered inadvertent or mistaken where a debtor either lacks knowledge of undisclosed claims or has no motive to conceal them. Coffaro, 721 F. Supp. 2d at 146 (citing Eastman v. Union Pac. R.R. Co., 493 F.3d 1151, 1157 (10th Cir. 2007); Barger v. City of Cartersville, 348 F.3d 1289, 1294 (11th Cir. 2003); Browning v. Levy, 283 F.3d 761, 776 (6th Cir. 2002); In re Coastal Plains, 179 F.3d at 210).

Goldson obviously cannot assert that she had no knowledge of her claims. She does contend, however, that she had no motive to conceal those claims, noting that she attached a copy of the Bankruptcy Court's confirmation order to her request to proceed in forma pauperis in this Court, (ECF No. 1), and that her plan requires her to continue making payments for three more years, which means that any money she receives through this lawsuit would "go towards making continued payments to the Plan and thereby satisfying her creditors." (Goldson Affirm. at 7). Her failure to disclose her claims in bankruptcy court belies this assertion. Indeed, as long as her claims remained hidden from her creditors, Goldson would have been able to keep any settlement or

proceeds for herself without paying them directly to her creditors. See Ibok, 2011 WL 293757, at *8 (collecting cases). Thus, even if a judgment in this case would have enhanced her ability to pay her creditors, it cannot be said that she had no motive to conceal.

Goldson, of course, maintains that she eventually provided notice to the trustee regarding this suit. The Defendant argues that the Court should not consider these communications, because the Court "may not 'consider matters outside the pleadings'" when ruling on a Rule 12(b)(6) motion. (ECF No. 29 (Def.'s Reply Mem.) at 3 (quoting Nakahata v. N.Y. Presbyterian Healthcare Sys., Inc., 723 F.3d 192, 202 (2d Cir. 2013)). This argument ignores the fact that Goldson is proceeding pro se in this case, which makes it appropriate for the Court to consider allegations raised in subsequent filings. See Crum, 562 F. Supp. 2d at 374 n.13. In any event, even if the Court considers Goldson's allegation that she provided notice to the trustee, an attempt on the part of a debtor to "correct an omission only after an opposing party either threatens to or actually does file a motion [is] of little to no consequence" in assessing a claim of judicial estoppel. Pfeifer v. Fed. Express Corp., No. 09 Civ. 1248 (EFM), 2014 WL 1246737, at *8 (D. Kan. Mar. 26, 2014). Here, Goldson wrote to the trustee regarding her federal case only after the Defendants made their request for a pre-motion conference. She therefore cannot rely on those communications to rebut their judicial estoppel argument.

Goldson further contends that there was no "judicial acceptance" of her incomplete and unamended asset schedule in the absence of "evidence that the

[bankruptcy] court was misled." (Goldson Affirm. at 6). In making this argument, Goldson relies on the fact that "no . . . suit existed" as of the time of her January 2011 filing. (Id.). Nonetheless, as noted above, Goldson's duty to disclose was ongoing. At the very least, when Goldson began taking action with regard to her claims, she had a duty to provide notice of the asset to the Bankruptcy Court and her creditors. See Robinson, 595 F.3d at 1274. Accordingly, her argument that the Bankruptcy Court had not relied on her representations is unavailing.

Although that argument lacks merit, the Defendant has failed to make the second showing required to invoke judicial estoppel for a different reason. By September 30, 2011, when the Bankruptcy Court confirmed Goldson's Chapter 13 plan, some of the events giving rise to Goldson's claims had occurred, but many had not. Most notably, Goldson's employment had yet to be terminated, and she had taken no action to pursue her claims. Since the date Goldson's plan was confirmed, the Defendant points to no action of the Bankruptcy Court that could be considered its adoption of Goldson's inconsistent statement that she had no unscheduled assets. The Defendant attempts to attach importance to the December 18, 2012 hearing on the trustee's motion to dismiss Goldson's petition. However, the docket shows only that the motion was withdrawn in open court. Neither Goldson nor her attorney appeared at this hearing, and the court took no action. (See In re Goldson, ECF No. 96). This hearing therefore does not reflect the court's adoption of any inconsistent position.

Until the Bankruptcy Court takes some action based on Goldson's representations, such as amending her plan, closing her case, or discharging her debts, it has not truly adopted her inconsistent position. See Ibok, 2011 WL 293757, at *7 ("The bankruptcy court, in discharging Ibok and closing his case, adopted Ibok's stated position that he did not have any outstanding legal claims."); In re Foreman, 378 B.R. 717, 726 (Bankr. S.D. Ga. 2007) ("[W]hen dealing with a cause of action that arises post-confirmation in a chapter 13 bankruptcy case, by previously confirming a chapter 13 plan the bankruptcy court has not 'adopted a position taken by the debtor that contradicts a position the debtor takes . . . by asserting that claim.'") (quoting In re Ross, 278 B.R. 269, 274 (Bankr. M.D. Ga. 2001)); Rosenshein v. Kleban, 918 F. Supp. 98, 104-05 (S.D.N.Y. 1996) ("adoption" occurred with court's approval of debtor's reorganization plan and discharge of debts). Because Goldson's bankruptcy petition remains open, her plan is still subject to amendment as a matter of course. 11 U.S.C. § 1329(a); Fed. R. Bankr. P. 1009(a). Accordingly, because Goldson could return to court to schedule her claims, there is no certainty that an inconsistent result will obtain, and judicial estoppel should not apply. See Amash, 503 B.R. at 236.

C.   Election of Remedies

In one brief paragraph at the end of its reply memorandum, the Defendant argues that Goldson's state law claims are barred by the election of remedies doctrine. (Def.'s Reply at 4). The Defendant raised this argument in its motion to dismiss Goldson's original complaint, but there was no reference to it in its motion to dismiss her

Amended Complaint. Courts generally may ignore arguments raised for the first time in reply. Playboy Enters., Inc. v. Dumas, 960 F. Supp. 710, 720 n.7 (S.D.N.Y. 1997), aff'd, 159 F.3d 1347 (2d Cir. 1998). Here, however, Goldson had an opportunity to respond to this argument – and did – in her opposition to the Defendant's original motion to dismiss. (ECF No. 19). More importantly, the issue presented is jurisdictional. See Moodie v. Fed. Reserve Bank of N.Y., 58 F.3d 879, 882 (2d Cir. 1995). Accordingly, the Court must consider the argument. Gonzalez v. Thaler, 132 S.Ct. 641, 648 (2012) (requiring courts to consider sua sponte issues relating to subject matter jurisdiction that the parties failed to present); see also T.D. Bank, N.A. v. JP Morgan Chase Bank, N.A., No. 10-2843, 2010 WL 3310262, at *4 (E.D.N.Y. Aug. 19, 2010) (exercising discretion to consider arguments raised on reply because the other party "would suffer no unfair prejudice").

Under New York Executive Law § 297(9), an individual may seek relief for unlawful discrimination "either from a court of appropriate jurisdiction or from the New York State Division of Human Rights or any local commission on human rights, but not both." Lennon v. New York City, 392 F. Supp. 2d 630, 640-41 (S.D.N.Y. 2005) (internal citations and brackets omitted). Accordingly, NYSHRL and NYCHRL claims, "once brought before the [Division], may not be brought again as a plenary action in another court." York v. Ass'n of Bar of City of N.Y., 286 F.3d 122, 127 (2d Cir. 2002). Instead, once an aggrieved party elects to bring her claims before the Division and receives a disposition, "she may appeal only to the Supreme Court of [the] State of New York." Id.

17

(citing N.Y. Exec. Law § 298). A state law such as this, which divests the state's own courts of jurisdiction, "also operates to divest a federal court of jurisdiction to decide the claim." McGullam v. Cedar Graphics, Inc., 609 F.3d 70, 74 n.3 (2d Cir. 2010). The election of remedies required by Section 297(9) therefore "poses an 'insuperable jurisdictional bar' to subsequently raising those same claims of discrimination in [federal] court." Smith-Henze v. Edwin Gould Servs. for Children & Families, No. 06 Civ. 3049 (LBS) (DCF), 2006 WL 3771092, at *3 (S.D.N.Y. Dec. 21, 2006) (quoting Moodie, 58 F.3d at 884). Having elected to raise her state law claims in the Division first, Goldson has made an irreversible decision that deprives this Court of jurisdiction to hear those claims. To the extent Goldson's Amended Complaint raises claims pursuant to the NYSHRL or NYCHRL, the Defendant's motion therefore should be granted and those claims dismissed.

IV. Conclusion

For the foregoing reasons, the matter should be dismissed without prejudice and with leave for the bankruptcy trustee to restore Goldson's federal claims within ninety days if the trustee wishes to do so.

V. Notice of Procedure for Filing of Objections to this Report and Recommendation

The parties are hereby directed that if they have any objections to this Report and Recommendation, they must, within fourteen days from today, make them in writing, file them with the Clerk of the Court, and send copies to the chambers of the Honorable George B. Daniels, United States District Judge, and to the chambers of the

undersigned, at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be directed to Judge Daniels. Any failure to file timely objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b).

Dated:   New York, New York
         May 12, 2014

                                                    _____
                                                            FRANK MAAS
                                                    United States Magistrate Judge

Copies to:

Marcia Goldson
6389 Decker Road
Bushkill, PA  18324

Defense Counsel via ECF