UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

MARCIA GOLDSON,                                         :

                                      Plaintiff,        :

        - against -                                     :

KRAL, CLERKIN, REDMOND,                                 :
RYAN, PERRY & VAN ETTEN, LLP,
                                                        :
                                      Defendant.
--------------------------------------------------------x

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #: _____           │
│ DATE FILED: 2/22/2016                │
└─────────────────────────────────────┘
```

**REPORT AND
RECOMMENDATION
TO THE HONORABLE
GEORGE B. DANIELS**[*]

13cv2747-GBD-FM

**FRANK MAAS**, United States Magistrate Judge.

        Pro se plaintiff Marcia Goldson ("Goldson") brings this employment

discrimination action against Kral, Clerkin, Redmond, Ryan, Perry & Van Etten, LLP,

("Kral Clerkin"), a New York law firm where she once worked as a paralegal.  Goldson

alleges that Kral Clerkin discriminated against her, and, in retaliation for her filing of a

discrimination complaint, eventually terminated her.  (See ECF No. 18 ("Amended

Complaint" or "Am. Compl.")).  She brings her claims pursuant to Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), and the Age Discrimination

in Employment Act of 1967, 29 U.S.C. § 621, et seq. ("ADEA").  (Id.).[1]

---

        [*]        Alexander Cavayero, a student at Columbia Law School, provided substantial
assistance in the preparation of this Report and Recommendation.

        [1]        Goldson originally also brought claims under the New York City and New York
State Human Rights Laws.  (See Am. Compl.).  On August 13, 2014, Your Honor adopted my
recommendation to dismiss those claims, (see ECF No. 46), leaving only her Title VII and
ADEA claims in this suit.

Following the close of discovery, Kral Clerkin has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (ECF No. 84). For the reasons set forth below, that motion should be granted in part, and denied in part.

I.      Background

        A.      Relevant Facts[2]

        Unless otherwise noted, the following facts either are undisputed or are set forth in the light most favorable to Goldson:

        Goldson is a Black female of Jamaican ancestry, who was fifty-two years old at the time of her termination. (Pl.'s Mem. at 2). Prior to beginning her employment with Kral Clerkin, Goldson earned a bachelor's degree in legal studies, a paralegal certificate from an American Bar Association program, and a notary license; she also had prior experience working for two personal injury defense firms. (Pl.'s Aff. ¶ 10).

        Kral Clerkin partner Gerald B. Ryan ("Ryan") hired Goldson in March 2003. (Pl.'s Aff. ¶ 1; see also Def.'s 56.1 Stmt. ¶ 8; Ryan Decl. ¶ 8;). She was the only

---

        [2]      The citations in this Report and Recommendation refer to the following: ECF No. 86 (Def.'s Rule 56.1 Stmt. ("Def.'s 56.1 Stmt.")); ECF No. 87 (Decl. of Gerald B. Ryan, dated Apr. 15, 2015 ("Ryan Decl.")); ECF No. 88 (Decl. of Jeffrey K. Van Etten, dated Apr. 15, 2015 ("Van Etten Decl.")); ECF No. 89 (Decl. of Kevin R. Brady, dated Apr. 15, 2015 ("Brady Decl.")); Brady Decl., Ex. 3 (Goldson Dep. Tr., dated Mar. 6, 2015 ("Goldson Tr.")); ECF No. 90 (Def.'s Mem. of Law in Supp. of Mot. for Summ. J. ("Def.'s Mem.")); ECF No. 94 (Pl.'s Aff. in Opp. to Mot. for Summ. J., dated May 15, 2015 ("Pl.'s Aff.")); ECF No. 95 (Pl.'s Rule 56.1 Stmt. ("Pl.'s 56.1 Stmt.")); ECF No. 96 (Pl.'s Mem. of Law in Opp. to Mot. for Summ. J. ("Pl.'s Mem.")); ECF No. 97 (Def.'s Reply ("Reply")); ECF No. 97-1 (Reply Decl. of Kevin R. Brady, dated May 27, 2015 ("Brady Reply Decl.")). Goldson also mailed the Court some material that was never docketed. The only relevant document in that submission is a résumé, a copy of which I have forwarded to your Chambers.

paralegal in the firm's New York City office while she was employed there.  (Ryan Decl. ¶ 7; Van Etten Decl. ¶ 7; Pl.'s 56.1 Stmt. ¶ 6).  Kral Clerkin also had another paralegal, Lorraine Carola ("Carola"), hired after Goldson, who worked in the firm's Long Island office.  (Ryan Decl. ¶ 7; Van Etten Decl. ¶ 7; Pl.'s Aff. ¶ 10).  In addition, in either 2012 or 2013, Kral Clerkin hired Michael Primavera ("Primavera"), a person below the age of forty, as a full-time "law clerk."  Primavera's duties included performing legal research and drafting motions and memoranda of law.  He also "handled IT issues," including "interfacing with vendors."[3]

At the time Goldson was hired, Kral Clerkin intended to have her work exclusively on matters pertaining to the clients of Kral Clerkin partner Jeffrey K. Van Etten ("Van Etten"), including the Nationwide Insurance Company ("Nationwide").  (See Pl.'s Aff. ¶ 1).  Accordingly, within the first year she was there, Kral Clerkin provided Goldson with the Nationwide Billing Guidelines for Counsel ("Billing Guidelines").

---

[3]      The only evidence that Goldson proffers concerning Primavera is her printout of Primavera's Linkedin profile page, (see Pl.'s Aff., Ex G), and a copy of his résumé, (see supra n.2)).  The Linkedin page states that Primavera began working as a Kral Clerkin law clerk in July 2013, while the résumé says he began that work in July 2012.  Both documents also indicate that Primavera worked as a part-time "Billing Clerk/Law Clerk from 2004 until 2011.  Although neither document reveals Primavera's age, they both state that Primavera graduated from Nassau Community College in 2010 and from Hofstra University in 2012.  I therefore have assumed, for present purposes, that Primavera is less than forty years old.

(Id. ¶ 4; see also id., Ex. A (Billing Guidelines); Pl.'s Mem. at 2).[4]  The Billing

Guidelines identified tasks to be performed by paralegals for which Nationwide would

pay, as well as secretarial and clerical tasks for which it would not pay.  (Id.).  Over time,

Goldson's duties included non-billable tasks, such as retrieving records and processing

authorizations, but she also performed many compensable paralegal tasks.  (Pl.'s Aff. ¶ 5;

Pl.'s 56.1 Stmt. ¶ 7; see also Ryan Decl. ¶ 8; Van Etten Decl. ¶ 8).  Kral Clerkin did not

require its paralegals to meet any annual billing requirements, nor did it perform periodic

evaluations of its paralegal staff.  (Ryan Decl. ¶ 6; Van Etten Decl. ¶¶ 6, 11).

On or about the date Goldson was hired, Kral Clerkin provided her with a

copy of its Equal Opportunity Employer Policy ("EEO Policy"), which was part of its

Office Procedures Manual.  (Ryan Decl. ¶ 4; Van Etten Decl. ¶ 4; Goldson Tr. 32-34).

The EEO Policy stated that Kral Clerkin was committed to making "all personnel

decisions without regard to age, race, creed, religion, color, sex, sexual orientation,

national origin, disability, marital status, citizenship, pregnancy, veteran's status, genetic

predisposition or carrier status, or any other category protected by law."  (Ryan Decl., Ex.

A at 4; see also id. ¶ 5; Van Etten Decl. ¶ 5).  The EEO Policy also required that

---

[4]        Kral Clerkin contends that the copy of the Billing Guidelines submitted by
Goldson as part of her opposition papers should be stricken because she failed to produce the
Billing Guidelines during discovery.  (See Reply at 1 n.2).  It appears, however, that the Billing
Guidelines were provided to Goldson during discovery by Kral Clerkin.  (See Brady Reply
Decl., Ex. B at 19 (May 8, 2015 letter from Kral Clerkin to Goldson confirming continued
confidentiality request as to certain documents produced during discovery pursuant to my order
dated May 7, 2015)).  Accordingly, although Kral Clerkin is correct that Goldson should have
sought leave to file the Billing Guidelines under seal, there is no reason for this Court not to take
them into consideration.

employees who believed that they were experiencing discrimination make a report to a

partner.  (Id.).  Goldson acknowledged receipt of the Office Procedures Manual, in

writing, on March 5, 2003, (Def.'s 56.1 Stmt. ¶ 8; Goldson Tr. 31-34; Pl.'s 56.1 Stmt. ¶ 8;

see also Brady Decl., Ex. 4), but she never complained to any Kral Clerkin partner about

any alleged discrimination during the course of her employment there, (Goldson Tr. 45-

46, 68, 70-72; see also Ryan Decl. ¶ 13; Van Etten Decl. ¶ 14).[5]

On March 26, 2012, Goldson sent Van Etten a "Personal" email, in which

she informed him that she would be exploring alternate employment options and asked

for a written letter of reference.  (Van Etten Decl., Ex. A; see also id. ¶ 9; Pl.'s 56.1 Stmt.

¶ 10).  One month later, on April 27, 2012, Goldson dual filed a Charge of Discrimination

("Charge") with the New York State Division of Human Rights ("Division") and the

federal Equal Employment Opportunity Commission ("EEOC").  (Brady Decl., Ex. 5

(Charge)).  In her Charge, Goldson claimed that she had been the victim of numerous

incidents of discrimination while she was employed by Kral Clerkin based on her race,

---

[5]       Although Goldson conceded during her deposition that she never "made a
complaint to anyone at the firm about discrimination," (Goldson Tr. 45), she now contends that
she complained to Van Etten, in or around 2010, that Ryan had threatened to fire her following
her conviction on two misdemeanor counts, (see Pl.'s Aff. ¶ 7; Pl.'s 56.1 Stmt. ¶ 16).  It is settled
law that a "party may not create an issue of fact by submitting an affidavit in opposition to a
summary judgment motion that, by omission or addition, contradicts the affiant's previous
deposition testimony."  Hayes v. N.Y.C. Dep't of Corr., 84 F.3d 614, 619 (2d Cir. 1996).  Even
if that were not so, neither Title VII nor the ADEA prohibits treating employees differently
based on their criminal histories.  See, e.g., Idlisan v. Mt. Sinai Med. Ctr., No. 12 Civ. 8935
(PAC) (RLE), 2015 WL 136012, at *3 n.2 (S.D.N.Y. Jan. 9, 2015) ("neither Plaintiff's physical
disabilities nor [his] criminal history are appropriate to consider under Title VII").  It thus is
undisputed that Goldson never complained to a Kral Clerkin partner about a form of
discrimination that Title VII or the ADEA is intended to address.

color, sex, national origin, marital status, and prior criminal convictions.  (Id.; see also Def.'s 56.1 Stmt. ¶ 17; Goldson Tr. 45-46).

On August 16, 2012, while Goldson's Charge remained pending, Ryan sent an email ("Reorganization Email") to all Kral Clerkin employees in the New York City office explaining a "reorganization" of Goldson's responsibilities.  (See Ryan Decl., Ex. B (Reorganization Email); see also id. ¶ 9; Pl.'s Aff. ¶ 6; Pl.'s 56.1 Stmt. ¶ 9).  Kral Clerkin contends that the purpose of the Reorganization Email was to "limit [f]irm expenses and to clarify to attorneys and non-attorney staff, the parameters of paralegal and staff responsibilities," noting that Kral Clerkin did not suspend Goldson, dock her pay, change her benefits, or demote her as a result of this "reorganization."  (Ryan Decl. ¶ 9).  Conversely, Goldson alleges that the Reorganization Email was sent in response to her filing of the Charge, and that it "significantly diminished the material responsibilities of [her] position."  (Pl.'s 56.1 Stmt. ¶ 9; see also Pl.'s Aff. ¶ 6).

On October 24, 2012, the Division issued a "Determination and Order After Investigation," in which it found no probable cause to believe that Kral Clerkin had engaged in any of the discriminatory actions alleged by Goldson.  (See Brady Decl., Ex. 6 ("Division Determination")).  Thereafter, on December 14, 2012, Goldson sent Ryan and Van Etten an email reminding them of her March 2012 request for a letter of reference.  (See Ryan Decl., Ex. C at 1; see also id. ¶ 10; Pl.'s 56.1 Stmt. ¶ 11).  In this email, Goldson also indicated that she was "looking for alternate employment."  (Id.).  On December 17, 2012, Ryan responded to Goldson by email, informing her that it was Kral

6

Clerkin's policy not to issue letters of reference regarding current firm employees, but that the firm would verify her position and dates of employment if contacted by a prospective employer.  (See Ryan Decl., Ex. C at 2; see also id. ¶ 10).  Goldson did not subsequently identify any prospective employers, and Ryan did not provide any references.  (Id. ¶ 10).

On January 21, 2013, Kral Clerkin held a partners' meeting to discuss and implement a "broad cost reduction plan in an effort to improve the [f]irm's profitability." (Id. ¶ 11; Van Etten Decl. ¶ 10).  During the meeting, the partners decided to eliminate the positions held by Goldson and another employee, to leave vacant the positions of two other employees who had resigned within the past six months, and to terminate the firm's arrangement with an outside messenger service that had served as the firm's courier for over twenty years.  (Id.).  Kral Clerkin contends that the partners fired Goldson, rather than Carola, the paralegal in the firm's Long Island office, because Carola had generated more revenue than Goldson in 2012 and was capable of absorbing Goldson's work.  (Van Etten Decl. ¶ 11).  The following day, January 22, Ryan and Van Etten met with Goldson to terminate her employment.  (Ryan Decl. ¶ 12; Van Etten Decl. ¶ 13; Pl.'s 56.1 Stmt. ¶ 15).  Kral Clerkin since has disbanded, although it remains registered with the New York State Department of State.  (See Pl.'s 56.1 Stmt., Ex. (Department of State entity information)).

B.      Procedural History

On February 1, 2013, after Goldson's termination, the EEOC issued a

"Dismissal and Notice of Rights," in which it adopted the Division's findings regarding

Goldson's Charge.  (Am. Compl. at 11).  Thereafter, Goldson timely commenced this

action on April 22, 2013.  (ECF No. 2).  A few days later, on April 25, Goldson filed a

second Charge with the EEOC, this time asserting discrimination and retaliation claims

based on her race, sex, national origin, and age.  (Brady Decl., Ex. 7 ("Second Charge")).

On May 30, 2013, the EEOC issued a "Notice of Right to Sue" letter with

respect to Goldson's Second Charge.  (Am. Compl. at 12).  Goldson then filed the

Amended Complaint in this action on July 24, 2013, asserting discrimination and

retaliation claims based on her race, color, national origin, sex, and age.  (See Am.

Compl.).  On September 20, 2013, Kral Clerkin moved to dismiss the Amended

Complaint.  (ECF No. 24).  Your Honor adopted my Report and Recommendation

regarding this motion on August 13, 2014.  (ECF No. 46; see also supra n.1).

Accordingly, the only claims remaining in this action are Goldson's claims under Title

VII and the ADEA.

On April 15, 2015, Kral Clerkin moved for summary judgment with respect

to Goldson's remaining federal claims.  (ECF No. 84).  Goldson filed opposition papers

on May 15 and 18, 2015, (ECF Nos. 94-96),[6] after which Kral Clerkin filed its reply on

May 27, 2015, (Reply).  The motion is consequently fully submitted.

II.     Applicable Law

    A.     Standard of Review

        Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment

is appropriate only when "the movant shows that there is no genuine dispute as to any

material fact" based on supporting materials in the record.  Fed. R. Civ. P. 56.  "An issue

of fact is genuine if 'the evidence is such that a reasonable jury could return a verdict for

the nonmoving party.' A fact is material if it 'might affect the outcome of the suit under

the governing law.'"  Roe v. City of Waterbury, 542 F.3d 31, 35 (2d Cir. 2008) (quoting

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

        In deciding a motion for summary judgment, the Court must "view the

evidence in the light most favorable to the party opposing summary judgment and must

draw all permissible inferences" in favor of that party.  Harris v. Provident Life &

Accident Ins. Co., 310 F.3d 73, 78 (2d Cir. 2002).  To defeat a motion for summary

---

    [6]     Pursuant to Local Civil Rule 56.2, Kral Clerkin gave Goldson notice that she was
required to submit admissible evidence in support of her claims or face their dismissal without a
trial.  (ECF No. 85).  Despite this notice, Goldson's counterstatement of material facts fails to
cite any specific parts of the record.  (See Pl.'s 56.1 Stmt.).  Since pro se litigants are entitled to
"special solicitude . . . when confronted with motions for summary judgment," Graham v.
Lewinski, 848 F.2d 342, 344 (2d Cir. 1988) (citing Sellers v. M.C. Floor Crafters, Inc., 842 F.2d
639, 642 (2d Cir. 1988)), I have considered Goldson's factual assertions to the extent that they
are supported by admissible evidence, despite her failure to comply with Local Civil Rule 56.1,
see Holtz v. Rockefeller & Co., 258 F.3d 62, 73 (2d Cir. 2001) (court has "broad discretion to
determine whether to overlook a party's failure to comply with the local court rules").

judgment, the nonmoving party cannot simply rely upon allegations contained in the

pleadings that raise no more than "some metaphysical doubt as to the material facts."

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Rather, the

nonmoving party must offer "concrete evidence from which a reasonable juror could

return a verdict in [her] favor."  Anderson, 477 U.S. at 256.

Assessments of credibility, choosing between conflicting versions of the

events, and the weighing of evidence are matters for the jury, not for the Court.  Fischl v.

Armitage, 128 F.3d 50, 55 (2d Cir. 1997); see also Fed. R. Civ. P. 56(e) advisory

committee's note to 1963 amendment.  Thus, "[t]he court's function is not to resolve

disputed issues of fact but only to determine whether there is a genuine issue of material

fact to be tried."  Fischl, 128 F.3d at 55.

"[T]rial courts must be especially chary" when considering summary

judgment motions in discrimination cases, because "the employer's intent is ordinarily at

issue" in such cases.  Chertkova v. Conn. Gen. Life Ins. Co., 92 F.3d 81, 87 (2d Cir.

1996).  Nevertheless, "[e]ven in the discrimination context, . . . a plaintiff must provide

more than conclusory allegations to resist a motion for summary judgment."  Gorzynski

v. JetBlue Airways Corp., 596 F.3d 93, 101 (2d Cir. 2010) (citation omitted).

Although the same summary judgment rules apply to a party proceeding pro

se, special latitude is appropriate to ensure that a meritorious claim is not foreclosed

simply because the papers submitted in opposition to the motion are inartfully worded.

See McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (pleadings should be read

liberally and interpreted to "raise the strongest arguments that they suggest") (quoting

Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).  By the same token, however, a pro

se party's "bald assertion[], completely unsupported by evidence," is not sufficient to

overcome a motion for summary judgment.  Pointdujour v. Mount Sinai Hosp., 121 F.

App'x 895, 898 (2d Cir. 2005) (quoting Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir.

1991)).  Consequently, "when an employer provides convincing evidence to explain its

conduct and the plaintiff's argument consists of purely conclusory allegations of

discrimination, the Court may conclude that no material issue of fact exists and it may

grant summary judgment to the employer."  Risco v. McHugh, 868 F. Supp. 2d 75, 98

(S.D.N.Y. 2012) (internal quotation marks and citation omitted).

      B.    <u>Discrimination</u>

      Title VII provides that "[i]t shall be an unlawful employment practice for an

employer . . . to discharge any individual, or otherwise to discriminate against any

individual with respect to [her] compensation, terms, conditions, or privileges of

employment, because of such individual's race, color, religion, sex, or national origin."

42 U.S.C. § 2000e-2(a)(1).  Under the ADEA, it is similarly unlawful for "an

employer . . . to discharge any individual or otherwise discriminate against any individual

with respect to [her] compensation, terms, conditions, or privileges of employment,

because of such individual's age."  29 U.S.C. § 623(a)(1).

      To overcome a motion for summary judgment with respect to claims under

either of these statutes, "a discrimination plaintiff must withstand the three-part burden-

shifting laid out by McDonnell Douglas Corp. v. Green," 411 U.S. 792 (1973).

McPherson v. N.Y.C. Dep't of Educ., 457 F.3d 211, 215 (2d Cir. 2006) (ADEA); see also

Dawson v. Bumble & Bumble, 398 F.3d 211, 216 (2d Cir. 2005) (Title VII).  Under that

rubric, the plaintiff must satisfy an initial burden of "proving by the preponderance of the

evidence a prima facie case of discrimination."  Texas Dep't of Cmty. Affairs v. Burdine,

450 U.S. 248, 252-53 (1981).  To establish a prima facie case, an employee must show

that:  (1) she was within the protected class; (2) she was qualified for the position; (3) she

was subjected to an adverse employment decision or discharge; and (4) the adverse action

occurred under circumstances giving rise to an inference of discrimination.  See Reynolds

v. Barrett, 685 F.3d 193, 202 (2d Cir. 2012) (Title VII); Stratton v. Dep't For the Aging,

132 F.3d 869, 879 (2d Cir. 1997) (ADEA).

  "A plaintiff sustains an adverse employment action if he or she endures a

materially adverse change in the terms and conditions of employment.  To be materially

adverse[,] a change in working conditions must be more disruptive than a mere

inconvenience or an alteration of job responsibilities."  Galabya v. N.Y.C. Bd. of Educ.,

202 F.3d 636, 640 (2d Cir. 2000) (internal quotation marks and citation omitted).  Among

the actions that qualify as materially adverse are "a termination of employment, a

demotion evidenced by a decrease in wage or salary, a less distinguished title, a material

loss of benefits, [or] significantly diminished material responsibilities."  Id.  As the

Second Circuit emphasized in Galabya, however, "other indices . . . unique to a particular

situation" also could be considered materially adverse.  Id.

Once the plaintiff makes out a prima facie case, "a rebuttable presumption of discrimination arises and the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the employment decision." Sharpe v. MCI Commc'ns Servs., Inc., 684 F. Supp. 2d 394, 401 (S.D.N.Y. 2010) (quoting Stratton, 132 F.3d at 879). The purpose of this step is "to force the defendant to give an explanation for its conduct, in order to prevent employers from simply remaining silent while the plaintiff founders on the difficulty of proving discriminatory intent." Felder v. Securticus Sec. Servs., No. 04 Civ. 9501 (LAK) (FM), 2006 WL 2627969, at *7 (S.D.N.Y. Sept. 12, 2006) (quoting Fisher v. Vassar Coll., 114 F.3d 1332, 1335-36 (2d Cir. 1997) (en banc)).

Finally, if the defendant provides a nondiscriminatory rationale for its conduct, the rebuttable presumption drops out of the case. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-11 (1993). The burden then rests on the plaintiff to prove not only that the proffered nondiscriminatory reason was pretextual, but also that the defendant discriminated against the plaintiff. Slattery v. Swiss Reins. Am. Corp., 248 F.3d 87, 93 (2d Cir. 2001). In other words, "the burden shifts back to the plaintiff to prove that discrimination was the real reason for the employment action." Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000). Under Title VII, discrimination need not be the sole reason, so long as it is one of the reasons for the adverse employment action; under the ADEA, however, a plaintiff must show that the action would not have occurred "but for" the plaintiff's age. Holcomb v. Iona Coll., 521 F.3d 130, 142 (2d Cir. 2008) (Title VII); Gorzynski, 596 F.3d at 106-07 (ADEA).

13

Ultimately, "the bottom line . . . is, simply, whether plaintiff has presented sufficient evidence from which a reasonable trier of fact could determine that defendants discriminated against her." Goldman v. Admin. for Children's Servs., No. 04 Civ. 7890 (GEL), 2007 WL 1552397, at *5 (S.D.N.Y. May 29, 2007); see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000) ("Although intermediate evidentiary burdens shift back and forth under [the McDonnell Douglas] framework, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.") (internal quotation marks and citation omitted).

C.     Retaliation

Both Title VII and the ADEA make it unlawful for an employer to retaliate against an employee who has exercised her statutory right to complain about conduct that she considers discriminatory.  42 U.S.C. § 2000e-3(a); 29 U.S.C. § 623(d).  A retaliation claim is "not dependent on the merits of the underlying discrimination complaint." Davis v. State Univ. of N.Y., 802 F.2d 638, 642 (2d Cir. 1986).  Thus, to establish a prima facie case of retaliation, an employee need only show that:  (1) the employee engaged in a protected activity; (2) the employer knew of this activity; (3) the employer took adverse action against the employee; and (4) there was a causal relation between the adverse action and the employee's protected activity.  Cifra v. Gen. Elec. Co., 252 F.3d 205, 216 (2d Cir. 2001) (Title VII); Terry v. Ashcroft, 336 F.3d 128, 140-42 (2d Cir. 2003)

14

(ADEA).  The filing of a complaint with an anti-discrimination agency constitutes

protected activity.  42 U.S.C. § 2000e-3(a); see Terry, 336 F.3d at 140-42.

        Mere temporal proximity between a plaintiff's protected activity and an

adverse employment action is sufficient to create an inference of retaliation for purposes

of proving a prima facie case.  El Sayed v. Hilton Hotels Corp., 627 F.3d 931, 933 (2d

Cir. 2010).  Without more, however, temporal proximity "is insufficient to satisfy [the

plaintiff's] burden to bring forward some evidence of pretext."  Id.

    D.    Statute of Limitations

        Under both Title VII and the ADEA, in order to prosecute a claim, a

claimant must "file a charge of discrimination with the EEOC (or with the similar state

agency, here, the New York State Division of Human Rights) within 300 days of the

alleged discriminatory employment action; claims for acts that occurred more than 300

days before the filing are time-barred in federal court."  Adams v. N.Y.S. Educ. Dep't,

752 F. Supp. 2d 420, 465 n.52 (S.D.N.Y. 2010) (citing 29 U.S.C. § 626(d)(1)(B); 42

U.S.C. § 2000e-5(e)(1)).  There are, however, several possible ways to overcome the

limitations period.  The Second Circuit has held that the 300-day limitations period is

"subject to waiver, estoppel, and equitable tolling."  Downey v. Runyon, 160 F.3d 139,

145-46 (2d Cir. 1998) (quoting Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393

(1982)).  Additionally, a plaintiff may rely on the "continuing violation exception."  See

Patterson v. Cnty. of Oneida, N.Y., 375 F.3d 206, 220 (2d Cir. 2004).  Under this

exception, if a plaintiff "files [a] charge that is timely as to any incident of discrimination

in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." Nghiem v. U.S. Dep't of Veterans Affairs, 323 F. App'x 16, 17 (2d Cir. 2009) (quoting Patterson, 375 F.3d at 220) (emphasis added).

## III.   Discussion

Goldson cites numerous indignities to which she allegedly was subjected while employed by Kral Clerkin.  These conditions included:  (A) being forced to perform "demeaning" clerical staff tasks, such as cleaning up files, (Goldson Tr. 26; Pl.'s Aff. ¶¶ 2-3); (B) having to step into the shoes of a former calendar clerk, (Pl.'s Aff. ¶ 3); (C) not receiving a written reference despite two requests in 2012, (id. ¶ 13; Pl.'s 56.1 Stmt. ¶¶ 10-11); (D) receiving less pay than other non-Black, non-minority employees, and not receiving raises or cost of living adjustments, (Pl.'s Aff. ¶¶ 10-11; Pl.'s 56.1 Stmt. ¶¶ 31-32); (E) a reduction in her paralegal responsibilities in August 2012 pursuant to the Reorganization Email, (Pl.'s Aff. ¶ 6; Pl.'s 56.1 Stmt. ¶¶ 9, 30; Pl.'s Mem. at 6); and (F) her termination in January 2013, (Pl.'s 56.1 Stmt. ¶ 35).

### A.   Statute of Limitations

Several of Goldson's claims of discrimination are barred by the statute of limitations.  In particular, it appears that Kral Clerkin's assignment of menial tasks to Goldson, including the request that she serve temporarily as the calendar clerk, occurred soon after she was hired in 2003.  (Pl.'s Aff. ¶¶ 2-3).  Moreover, there is no indication that Kral Clerkin ever took or failed to take any actions that would entitle Goldson to rely

16

on the doctrines of waiver or estoppel with respect to these work assignments, nor has Goldson suggested any basis for equitable estoppel to apply.  There also has been no showing that any of the sporadic acts during the early years about which she complains were part of a continuing firm policy of discrimination.  Whatever discriminatory acts may have occurred during the limitations period therefore cannot be used to "pull in the time-barred discriminatory act[s]."  See Nat. R.R. Pass. Corp. v. Morgan, 536 U.S. 101, 113 (2002) (citing Del. State Coll. v. Ricks, 449 U.S. 250, 257 (1980)).

As a consequence, the only allegedly discriminatory adverse employment actions that this Court can consider are those occurring within 300 days of the filing of Goldson's first Charge, i.e., after July 2, 2011.  Those acts are Kral Clerkin's (1) alleged failure to give Goldson a raise or to pay her as much as other employees during that period, (2) failure to provide her with a written reference, (3) changes to her paralegal responsibilities following the Reorganization Email, and (4) eventual termination of her.

B.     ADEA

Goldson seeks relief under the ADEA, but has adduced no evidence in support of that claim.  Indeed, the only relevant fact that she conceivably has been able to muster with respect to that claim is that Kral Clerkin apparently hired Primavera as a full-time law clerk either in July 2012 or July 2013.  (See Pl.'s Aff. ¶ 12; see also id., Ex. G; supra n.3).  Suffice it to say, there is no proof that Primavera's law clerk position was comparable to Goldson's paralegal position, either in terms of job duties or compensation.  Moreover, Primavera also "handled IT issues," such as "solving and correcting computer

17

and printer issues" and "interfacing with vendors," duties that do not appear to have been part of Goldson's assignment as a paralegal.  (Pl.'s Aff. ¶ 5; Pl.'s 56.1 Stmt. ¶ 7).  In any event, even if Primavera and Goldson had the same duties, and he was substantially younger, there is nothing about the decision to hire him that suggests that any of the adverse employment actions about which she complains were motivated by ageist bias.  Nor has Goldson adduced any other evidence that any of these adverse actions would not have been taken "but for" her age.  Kral Clerkin therefore is entitled to summary judgment with respect to Goldson's ADEA age discrimination claim.  See Sklar v. N.Y. Life Ins. Co., No. 00 Civ. 2254 (WHP), 2001 WL 984724, at *5 (S.D.N.Y. Aug. 27, 2001) ("mere fact" that plaintiff was fifty-two years old does not raise inference of age discrimination).

      C.     <u>Title VII Discrimination</u>

          1.     <u>Prima Facie Case</u>

      Kral Clerkin does not dispute that Goldson is a Black female of Jamaican ancestry.  She therefore is clearly a member of several classes protected under Title VII.  <u>See</u> 42 U.S.C. § 2000e-2(a).  Similarly, Kral Clerkin has not disputed Goldson's qualifications as a paralegal.  Goldson also has alleged that she suffered several adverse employment actions during the limitations period because Kral Clerkin failed to give her a raise or pay her as much as other non-minority employees, reorganized her responsibilities, and terminated her.  Thus, the remaining question at the first stage of the <u>McDonnell Douglas</u> analysis is whether she can show that the circumstances surrounding

18

any of these actions give rise to an inference of discrimination based on her race, color, sex, or national origin.  See Reynolds, 685 F.3d at 202.  Goldson has not proffered any evidence from which a reasonable factfinder could conclude that Kral Clerkin's decision-making with respect to any of these adverse employment actions was based, in whole or in part, on any of these characteristics.

With respect to the issue of pay, Goldson could, of course, establish an inference of discrimination by showing that Kral Clerkin treated her "less favorably than similarly situated persons outside of [her] protected class."  Maturine v. Am. Int'l Grp., Inc., No. 04 Civ. 9064 (GBD), 2006 WL 3206098, at *5 (S.D.N.Y. Nov. 6, 2006) (citing Graham, 230 F.3d at 40).  A plaintiff seeking to make such a prima facie showing must establish, however, that the other employees had a "situation sufficiently similar . . . to support at least a minimal inference that the difference of treatment may be attributable to discrimination."  McGuinness v. Lincoln Hall, 263 F.3d 49, 54 (2d Cir. 2001).

Here, the only evidence that Goldson has introduced with respect to the pay raises of other employees during the limitations period is that Joann Illuzzi ("Illuzzi"), a recently-hired secretary, received a pay increase, after which she still earned $4,000 less than Goldson.  (See Pl.'s Aff., Ex. F at 3 (Kral Clerkin's report to the Division)).  Seven other employees about whom either Goldson or the Division had inquired, however, received no increase during that period.  (Id.).  The fact that one other employee performing entirely different work received a raise therefore in no way suggests that Kral

Clerkin's failure to grant Goldson a raise was based on an improper discriminatory motive.

Kral Clerkin also reported to the Division that Carola earned more than Goldson.  (Id. at 4).  Carola, however, provided paralegal services for fourteen attorneys, nearly double the eight attorneys for whom Goldson worked in the New York City office. (Id.).  According to Kral Clerkin, Carola also worked on "all of the firm's medical malpractice cases," which involved "far more voluminous . . . medical records" than the cases assigned to Goldson.  (Id.; see also Pl.'s Mem. at 5).  Accordingly, even if Carola was not a member of a class protected under Title VII, which Goldson has not argued, Goldson has failed to show that Carola's situation was sufficiently similar to her own to suggest that the differential treatment she received was attributable to discrimination. McGuinness, 263 F.3d at 54.

Turning to the reorganization of Goldson's duties, Goldson contends that the Reorganization Email materially modified her responsibilities.  (Pl.'s Aff. ¶ 6; Pl.'s 56.1 Stmt. ¶ 9).  Specifically, according to Goldson, the reorganization forced her to stop handling some of her previous paralegal tasks and, therefore, reduced the hours she could bill pursuant to Nationwide's Billing Guidelines.  (Id.).  Kral Clerkin has not disputed this assertion, arguing instead simply that the reorganization was not materially adverse because it was not accompanied by a suspension, demotion, or reduction in her pay or benefits.  (Ryan Decl. ¶ 9; see also Def.'s Mem. at 10 (citing Harrison v. N.Y.C. Off-Track Betting Corp., No. 99 Civ. 6075 (VM), 2001 WL 1154691, at *3 (S.D.N.Y. Sept.

28, 2001);  Wright v. Goldman Sachs & Co., 387 F. Supp. 2d 314, 327 (S.D.N.Y. 2005)

("[N]ot everything that makes an employee unhappy is an actionable adverse action.")

(internal quotation marks and citations omitted)).  Although that may be true, it does not

preclude a finding that the reorganization was materially adverse.  Indeed, the reduction

in Goldson's billable tasks may well have led to her later termination, which Kral Clerkin

has sought to justify, at least in part, on the basis that Carola generated more revenue for

the firm than Goldson in 2012.  The reorganization may well have created a situation in

which Goldson became less valuable to the firm than Carola and, therefore, vulnerable to

termination.  If so, even if Goldson's pay remained the same, the reorganization of her

responsibilities may have constituted an adverse employment action.  For that reason, not

only Goldson's termination, but also the reorganization of her responsibilities, may rise to

the level of an adverse employment action.[7]

> That said, to make out a prima facie case, Goldson must show that there is a

basis upon which a finder of fact could conclude that one or both of these actions was

motivated by discriminatory intent.  In that regard, Goldson has proffered nothing more

than conclusory statements that Kral Clerkin's actions were motivated by her race, color,

sex, or national origin.  Such speculation, however, is not a substitute for admissible

---

[7]    The only other action during the limitations period upon which Goldson relies is the failure to provide her with a written reference despite her two requests.  Such a minimal inconvenience clearly does not rise to the level of a material adverse change in the conditions of Goldson's employment.  See Jimenez v. Donahoe, 968 F. Supp. 2d 609, 620 (S.D.N.Y. 2013) ("To be materially adverse, the change must be more disruptive than a mere inconvenience or an alteration of job responsibilities.") (internal quotation marks and citation omitted).  Accordingly, it is not a basis upon which Goldson can bring a Title VII claim.

evidence.  See Bickerstaff v. Vassar Coll., 196 F.3d 435, 456 (2d Cir. 1999) ("[feelings

and perceptions] of being discriminated against [are] not evidence of discrimination")

(internal quotation marks omitted, brackets in original); Butler v. N.Y. Health & Racquet

Club, 768 F. Supp. 2d 516, 532 (S.D.N.Y. 2011) ("conclusory assertions" that supervisor

acted out of racial bias are insufficient to establish inference of discrimination).

       During her deposition, Goldson was given several opportunities to cite an

evidentiary basis for her belief that she was a victim of unlawful discrimination, but

proved unable to do so.  For example, when she was asked repeatedly whether she had

any witnesses who could support her discrimination claims, Goldson responded as

follows:

> You mean if someone is going to come out of the woodwork
> and say I heard them say this, that or the other . . . I don't
> have anyone who's going to physically come in here and say[]
> yes, I heard this or yes, I heard that. . . . No, I don't have any
> witnesses.

(Goldson Tr. 123).  Moreover, Goldson effectively conceded her own lack of evidence in

her opposition papers, noting that, "we know discrimination when we see it, but often

time we can't prove it beyond a reasonable doubt . . . ."  (Pl.'s Aff. ¶ 13).

       Continuing in the same vein, when she was asked during her deposition to

describe why she had filed a federal employment discrimination action, Goldson stated:

> [B]ecause [Kral Clerkin], they hired me, they retained my
> services for close to ten years.  Over the course of that ten
> years I was subjected to all sorts of acts of discriminatory in
> nature.  Some of them people deemed them has, these are
> stuff that has, you know, it's just the good old boys club, you

> know, it's just bullying.  Out of it – it's discriminatory in
> nature.  The minute I start to speak up, you know, I felt like I
> couldn't take it anymore and I started to speak up, right, I'm
> tossed out to the dogs, right?  And um, it's as if I never
> existed, I never worked for you.  My thing is, um, if you had
> somebody who worked for you for almost ten years and you
> are not saying that this person was not a good employee, you
> are not making a claim that this person was incompetent, what
> is it that will prevent you from saying to another employer
> that this person is competent, this person is capable of doing
> their job, this person is thorough, you know, the bottom line is
> that, you know, this doesn't happen to somebody else.  Who
> made a decision that they are gonna take it and they just
> gonna deal with it and move on.

(Goldson Tr. at 132-33).  Goldson's argument thus appears to be that she was a well-

qualified employee performing her job satisfactorily, (see Pl.'s Aff. ¶ 11; Pl.'s 56.1 Stmt.

¶ 14; Pl.'s Mem. at 4), and that the only possible basis for Kral Clerkin's actions

consequently had to be her race, color, sex, or national origin.  No rational factfinder

could conclude that this is sufficient to establish a prima face case of discrimination based

upon Goldson's membership in a protected class.

Nor does the mere fact that Goldson was the only Black female employee

of Jamaican ancestry at Kral Clerkin, without more, give rise to an inference that Kral

Clerkin's actions were motivated by discrimination.  See, e.g., Risco, 868 F. Supp. 2d at

105 ("Without considerably more analysis and interpretation of why and how it came to

be that Plaintiff was the only [dark-skinned, Hispanic employee in her department], that

fact in isolation is of limited value to the Court.  No rational finder of fact could use this

piece of information alone to infer that Plaintiff's termination was based on impermissible

racial animus.") (internal quotation marks and citation omitted, alteration in original);

Mattison v. Potter, 515 F. Supp. 2d 356, 374 (W.D.N.Y. 2007) (assumption that

harassment of plaintiff was racially motivated because she was the only Black female

employee in her unit deemed "too speculative to warrant trial").

Accordingly, to the extent that Goldson has alleged claims of discrimination

on the basis of her race, color, sex, or national origin, she has failed to establish a prima

facie case.

### 2. Nondiscriminatory Rationale and Pretext

Even if one were to assume that Goldson could establish a prima facie case

of discrimination, her claims still would fall short because:  (a) Kral Clerkin has

articulated legitimate, nondiscriminatory rationales for its actions; and (b) Goldson has

failed to present evidence suggesting that these rationales were pretextual.

#### a. Nondiscriminatory Rationale

At the outset, Kral Clerkin explained to the Division that Illuzzi received a

pay raise because it feared that "if it did not increase her salary . . . [,] she would leave the

firm."  (Pl.'s Aff., Ex. F at 3).  This clearly is a nondiscriminatory rationale for the

decision to give Illuzzi, but not Goldson, a raise.

Although Kral Clerkin does not expressly characterize its justifications for

Carola's higher pay as a nondiscriminatory rationale, it is clear that Carola worked on

more record-intensive medical malpractice cases and generated approximately thirteen

thousand dollars more in revenue than Goldson.  (See Ryan Decl. ¶ 7; Van Etten Decl.

¶¶ 7, 11; Def.'s Mem. at 4, 14).  This unquestionably is a valid nondiscriminatory basis

for the decision to pay Carola more than Goldson.  See Rasco v. BT Radianz, No. 05 Civ.

7147 (BSJ), 2009 WL 690986, at *7 (S.D.N.Y. Mar. 17, 2009) (finding that plaintiff's

inferior sales performance was sufficient to establish a nondiscriminatory justification for

the promotion of other employees).

       Turning to the "reorganization" of Goldson's responsibilities, Ryan stated

that the purpose of his Reorganization Email was "to limit [f]irm expenses and to clarify

to [New York City] attorneys and non-attorney staff, the parameters of paralegal and staff

responsibilities."  (Ryan Decl. ¶ 9).  Even if Goldson were able to show that her paralegal

responsibilities were reduced as a result, the reduction of cost is a legitimate

nondiscriminatory basis for taking action.  See Woroski v. Nashua Corp., 31 F.3d 105,

109 (2d Cir. 1994), abrogated on other grounds by Schnabel v. Abramson, 232 F. 3d 83

(2d Cir. 2000) ("business-justified company-wide reduction in force, conducted on an

unbiased basis" constitutes legitimate nondiscriminatory basis for action).

       Kral Clerkin similarly contends that Goldson's termination was solely

based on the need to implement a "broad cost reduction plan in an effort to improve the

[f]irm's profitability."  (Ryan Decl. ¶ 11; Van Etten Decl. ¶ 10; Def.'s Mem. at 13-14).  In

its determination to keep only one of the firm's two paralegals, the partners concluded

that not only did Carola generate more revenue, but also that she could "absorb Ms.

Goldson's work, which could potentially result in her being able to bill her salary."  (Van

Etten Decl. ¶ 11).  The decision to terminate employees based on a cost reduction plan is a nondiscriminatory justification for a defendant's actions.  See Woroski, 31 F.3d at 109.

Finally, although Kral Clerkin did not provide Goldson with a written reference in furtherance of her job search, this was consistent with its policy of simply confirming an employee's position and dates of employment if contacted by a prospective employer.  (Ryan Decl. ¶ 10).  Such a firm-wide policy, applicable to all employees, obviously is not discriminatory.

As the foregoing establishes, Kral Clerkin has provided a nondiscriminatory rationale for each of its challenged actions.  Accordingly, even if Goldson had established a prima facie case, to survive summary judgment with respect to her Title VII discrimination claims, she would still have to show that at least some of Kral Clerkin's rationales were pretextual.  See Slattery, 248 F.3d at 93.

          b.     Pretext

Goldson appears to contend that Kral Clerkin's stated rationales were pretextual because:  (i) Carola was hired after she was and did not have the same qualifications, (see Pl.'s Aff. ¶ 10; Pl.'s Mem. at 4); and (ii) she was not aware of either a broad cost reduction plan or that the firm was "firing [her] for economic reasons," (see Pl.'s 56.1 Stmt. ¶ 12).

Any contention that Carola's allegedly lesser qualifications leads to an inference of pretext faces a substantial burden.  Goldson would have to show that the differences between her and Carola were so stark that only discrimination could account

for the decision to pay Carola more and to keep her, rather than Goldson, as an employee.

See Byrnie v. Town of Cromwell Bd. of Educ., 243 F.3d 93, 103, (2d Cir. 2001)

("plaintiff's credentials would have to be so superior to the credentials of the person

selected for the job that no reasonable person, in the exercise of impartial judgment, could

have chosen the candidate selected over the plaintiff for the job in question.") (internal

quotation marks and citation omitted).  The only difference Goldson points to between

her qualifications and those of Carola is that Goldson has a paralegal certificate from an

American Bar Association program.  (See Pl.'s Aff. ¶ 10; Pl.'s Mem. at 4).  This minor

distinction is simply not enough to show that Kral Clerkin's stated rationale for its

decision to pay Carola more may have been pretextual.

　　　　　Similarly, any contention that Kral Clerkin's cost reduction plan served as a

pretext for discrimination also fails.  Not only has Goldson failed to provide any evidence

that would contradict Kral Clerkin's assertions that it was attempting to reduce costs, but,

even more detrimental to her claim, Goldson does not dispute that there were other

employees who were terminated or not replaced.  Instead, Goldson simply contends that

she "[did] not know" of other employees being discharged.  (Pl.'s 56.1 Stmt. ¶ 12).  It is

undisputed that the Kral Clerkin partners, including Ryan and Van Etten, met on January

21, 2013, to discuss a firm-wide cost reduction plan, and subsequently terminated

Goldson the following day as part of that plan.  (Ryan Decl. ¶ 11; Van Etten Decl. ¶ 10;

Pl.'s 56.1 Stmt. ¶ 12).  Without additional evidence to the contrary, Goldson's conclusory

allegation that Kral Clerkin's implementation of a cost reduction plan was a pretext for

discrimination is not enough for a rational factfinder to infer any discriminatory motivation.

Accordingly, Kral Clerkin is entitled to summary judgment with respect to Goldson's claims of discrimination on the basis of her race, color, sex, or national origin.

D.     Title VII Retaliation

Goldson also argues that Kral Clerkin's decisions to reorganize her responsibilities and, later, to terminate her employment constituted unlawful retaliatory acts.  To prevail on these retaliation claims, Goldson first must establish that she was engaged in a protected activity.  Cifra, 252 F.3d at 216.  Here, it is undisputed that Goldson filed a Charge with the EEOC on April 27, 2012.  (Charge; Pl.'s 56.1 Stmt. ¶ 16).  The filing of that administrative complaint constitutes protected activity within the meaning of Title VII.  See 42 U.S.C. § 2000e-3(a).  It also is undisputed that Kral Clerkin was aware of this activity.  (See Def.'s Mem. at 12).  Moreover, Goldson's termination in January 2013 clearly constituted an adverse employment action and, as noted above with regard to her discrimination claim, the reorganization of her responsibilities in August 2012 may have as well.[8]  Thus, the only remaining issue with respect to Goldson's

---

[8]     The adverse employment action element is much broader for retaliation claims than discrimination claims.  See Hahn v. Bank of Am. Inc., No. 12 Civ. 4151 (DF), 2014 WL 1285421, at *14 (S.D.N.Y. Mar. 31, 2014) (citing Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 67 (2006)).  Accordingly, a plaintiff need only show that the employer's action resulted in injury or harm, and that "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."  Burlington, 548 U.S. at 67-68 (internal quotation marks and citation omitted).

retaliation claim is whether there was a causal relation between an adverse employment
action undertaken by Kral Clerkin and Goldson's protected activity.

Kral Clerkin is correct that the nine months that elapsed between Goldson's
filing on April 27, 2012, and her termination on January 22, 2013, viewed in isolation,
would likely pose a temporal proximity hurdle.  Kral Clerkin, however, has not addressed
the causal connection between Goldson's filing of her Charge on April 27, 2012, and the
reorganization of her responsibilities on August 16, 2012.

Kral Clerkin maintains that Goldson was terminated in January 2013
because "Ms. Carola generated more revenue than Ms. Goldson, as Ms. Carola billed a
total of $41,745.99, whereas Ms. Goldson billed only $28,087.80," during 2012.  (Van
Etten Decl. ¶ 11).  Kral Clerkin argues that, given Goldson's lower billable revenue, she
represented the more obvious choice between the two paralegals to dismiss.  (See id.;
Def.'s Mem. at 4).  There nevertheless is a genuine issue of material fact as to whether
Goldson's lower billable revenue at the end of 2012 was a direct result of her reorganized
responsibilities after the Reorganization Email.  (Pl.'s Aff. ¶ 6; Pl.'s 56.1 ¶ 9; see
also Ryan Decl. ¶ 9).  Although neither party has informed the Court precisely when Kral
Clerkin learned that Goldson had filed her Charge, it apparently was, at most, three and
one-half months before the reorganization of Goldson's responsibilities.  Given this
relatively brief interval, a rational factfinder certainly could conclude that there was a
causal connection between Goldson's protected activity and the reorganization of her
responsibilities.  A rational factfinder could also conclude that Kral Clerkin's stated

29

nondiscriminatory rationale for her termination was pretextual because the firm reorganized Goldson's responsibilities in a manner that ensured that she would be unable to increase or even maintain her previous billing revenue.

In sum, a rational factfinder could find that Kral Clerkin's justifications for its actions were pretextual because Kral Clerkin set Goldson up to fail soon after learning that she had filed her Charge. For this reason, Kral Clerkin's motion for summary judgment should be denied insofar as its seeks the dismissal of Goldson's retaliation claims.

## IV. Conclusion

For the foregoing reasons, Kral Clerkin's motion for summary judgment, (ECF No. 84), should be granted in part, and denied in part.

## V. Notice of Procedure for Filing Objections to this Report and Recommendation

The parties shall have fourteen (14) days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a) and (d). Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable George B. Daniels, to my chambers at the United States Courthouse, 500 Pearl Street, New York, N.Y. 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be directed to Judge Daniels. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See

30

Thomas v. Arn, 474 U.S. 140 (1985); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b).

       SO ORDERED.

Dated:      New York, New York
             February 22, 2016

                                 FRANK MAAS
                      United States Magistrate Judge

Copies to:

Marcia Goldson (via U.S. Mail)
6389 Decker Road
Bushkill, Pennsylvania 18324

Defense counsel (via ECF)