UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
MARCIA GOLDSON,

                  Plaintiff,

    -against-

KRAL, CLERKIN, REDMOND, RYAN, PERRY
& VAN ETTEN, LLP,

                  Defendant.
------------------------------------- x

MEMORANDUM DECISION
AND ORDER

13 Civ. 2747 (GBD) (FM)

GEORGE B. DANIELS, United States District Judge:

    *Pro se* plaintiff Marcia Goldson ("Plaintiff") brings this action against Kral, Clerkin, Redmond, Ryan, Perry & Van Etten, LLP ("Defendant"). (*See* Am. Compl., ECF No. 18.) According to Plaintiff, Defendant, her former employer, discriminated and retaliated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, *et seq.*,[1] because she is an African American female who was fifty-two years old at the time of her termination. (Am. Compl., at 3-4.) Plaintiff, who worked as a paralegal for the defendant law firm from March 2003 until her January 22, 2013 termination, argues that Defendant subjected her to retaliation and disparate treatment because of her race, national origin, gender, and age. (*See id.*)

    Plaintiff filed Charges of Discrimination with both the New York State Division of Human Rights and the Equal Employment Opportunity Commission, complaining of discrimination based

---

[1] This Court previously issued an order adopting Magistrate Judge Maas' recommendation to dismiss Plaintiff's New York City and New York State Human Rights Laws claims, leaving only Plaintiff's Title VII and ADEA claims. (August 13, 2014 Order, ECF No. 46.)

on her race, color, national origin, and gender on April 27, 2012. (*See* Am. Compl., at 14 ("First Charge."))

This matter was referred to Magistrate Judge Frank Maas on May 7, 2013. (ECF No. 8.) Defendant moved for summary judgment pursuant to Federal Rule of Civil Procedure Rule 56 on April 15, 2015. (*See* ECF No. 84). Before this Court is Magistrate Judge Maas' February 22, 2016 Report and Recommendation ("Report," ECF No. 102), recommending that Defendant's motion for summary judgment be granted as to Plaintiff's ADEA and Title VII discrimination claims, and denied as to Plaintiff's retaliation claim.[2] (Report at 29.) This Court adopts those recommendations.

## I. LEGAL STANDARD

This Court may accept, reject, or modify, in whole or in part, the findings set forth in the Report. 28 U.S.C. § 636(b)(1)(C). When there are objections to the Report, the Court must make a *de novo* determination of those portions of the Report to which objections are made. *Id.*; *see also Rivera v. Barnhart*, 423 F. Supp. 2d 271, 273 (S.D.N.Y. 2006). The district judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. *See* Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1)(C). The Court need not conduct a *de novo* hearing on the matter. *See United States v. Raddatz*, 447 U.S. 667, 675-76 (1980). Rather, it is sufficient that the Court "arrive at its own, independent conclusion" regarding those portions of the Report to which objections were made. *Nelson v. Smith*, 618 F. Supp. 1186, 1189-90 (S.D.N.Y. 1985) (quoting *Hernandez v. Estelle*, 711 F.2d 619, 620 (5th Cir. 1983) (internal quotation marks omitted)). When no party files objections to a Report, the Court may adopt the Report if "there is no clear error on

---

[2] The relevant procedural and factual background is set forth in greater detail in the Report, and is incorporated herein. (*See Report*, at 2-10.)

the face of the record." *Adee Motor Cars, LLC v. Amato*, 388 F. Supp. 2d 250, 253 (S.D.N.Y. 2005) (quoting *Nelson*, 618 F. Supp. at 1189).

Magistrate Judge Maas advised the parties that failure to file timely objections to the Report would constitute a waiver of those objections on appeal. (Report at 30); *see also* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). Defendant filed timely objections to the Report (Def.'s Obj., ECF No. 104.) As of the date of this Order, Plaintiff neither responded to Defendant's objections nor filed her own objections to the Report. This Court has considered the issues raised in these objections and reviews *de novo* the objected-to portions of the Report.

Summary judgment is appropriate where the record before the court establishes that there is no "genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a fact is genuinely disputed, the district court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996); *see also Mormol v. Costco Wholesale Corp.*, 364 F.3d 54, 56 n.1 (2d Cir. 2004) ("[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." (internal quotation marks omitted)).

However, to show a genuine dispute of material fact, the nonmoving party must provide "hard evidence," *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998), "from which a reasonable inference in [her] favor may be drawn," *Binder & Binder PC v. Barnhart*, 481 F.3d

141, 148 (2d Cir. 2007) (internal quotation marks omitted). "[E]ven in the discrimination context, a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (internal citation omitted). "To satisfy Rule 56(e), affidavits must be based upon 'concrete particulars,' not conclusory allegations. To the extent that these affidavits contain bald assertions and legal conclusions—for example, that [a co-worker] 'was always making racial slurs about minorities,' and that [the plaintiff] 'was working in a hostile or abusive working environment'—the district court [can] properly refuse[ ] to rely on them." *Schwapp*, 118 F.3d at 111 (internal citations omitted); *accord Hicks v. Baines*, 593 F.3d 159, 167 (2d Cir. 2010) ("[A] party cannot create a triable issue of fact merely by stating in an affidavit the very proposition they are trying to prove.") (internal citations omitted).

*Pro se* submissions are read liberally and interpreted to "raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F. 3d 787, 790 (2d Cir. 1994) (internal citation omitted). However, "[p]roceeding *pro se* does not otherwise relieve a litigant of the usual requirements of summary judgment, and a *pro se* party's bald assertions unsupported by evidence, are insufficient to overcome a motion for summary judgment." *Rodriguez v. Hahn*, 209 F. Supp. 2d 344, 348 (S.D.N.Y. 2002) (internal citation omitted).

## II. TITLE VII AND ADEA CLAIMS

Title VII of the Civil Rights Act of 1964 forbids employment discrimination against any individual based on that individual's "race, color, religion, sex, or national origin." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 56 (2006) (citing 42 U.S.C. § 2000e–2(a)). A plaintiff may base a discrimination claim on two types of prohibited acts: (1) the employer's disparate treatment, or (2) the employer's maintenance of a hostile work environment. *See Littlejohn v. City*

*of N. Y.*, 795 F.3d 297, 312, 320 (2d Cir. 2015). Title VII also provides that an employer may not retaliate against or punish an employee's opposition to employment discrimination. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2525 (2013) (citing Title VII, § 2000e–3(a)).

Similarly, the ADEA forbids employers from discriminating in hiring, discharge, or the setting of "compensation, terms, conditions, or privileges of employment" by reason of the age of an employee. 29 U.S.C. § 623(a)(1); *see also Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609 (1993). The ADEA's protection extends only to those individuals who, like Plaintiff, are over 40 years old. 29 U.S.C. § 631(a); *see Raskin v. Wyatt Co.*, 125 F.3d 55, 60 (2d Cir. 1997). Claims under the ADEA receive the same analysis as claims under Title VII. *See, e.g., Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119 (2d Cir. 2012); *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 913 (2d Cir. 1997).

## A. DISPARATE TREATMENT

To defeat a motion for summary judgment under either statute, a plaintiff must first establish a prima facie case of discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993). To establish a prima facie case of discrimination under Title VII and the ADEA, a plaintiff must show (1) membership in a protected class, (2) qualification for the position she held, (3) an adverse employment action,[3] and (4) that the adverse employment action occurred under circumstances that give rise to an inference of discrimination. *See Ruiz v. Cnty. of Rockland*, 609

---

[3] The Report properly found that from the list of Plaintiff's alleged adverse employment actions, only the incidents occurring after July 2, 2011, three hundred days prior to Plaintiff's filing of her first discrimination charge, are timely. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). The Report also properly found that Plaintiff had failed to show that any of the pre-July 2, 2011 adverse employment actions were part of a continuing policy of discrimination at the defendant law firm, so as to fall under the "continuing violation" exception in discrimination cases. (*See* Report, at 17.) *See also Lightfoot*, 110 F.3d at 907 (internal citations omitted) (defining "continuing violation" exception).

F.3d 486, 491-92 (2d Cir. 2010). The Report properly found that Plaintiff failed to establish a prima facie case of discrimination based on her age, race, or gender. (Report, at 17-24.)

The parties do not dispute that Plaintiff has alleged the first three elements of a prima facie case of discrimination. First, Plaintiff is a member of at least three protected classes as an African American female of Jamaican national origin under Title VII. *Ruiz*, 609 F.3d at 491. She was over forty at the time the allegedly adverse employment actions occurred for ADEA purpose. (*See* Am. Compl., at 3.) As to the second element, it is undisputed that Plaintiff was qualified as a paralegal. (*See* Report, at 18.) Third, the Report found that Plaintiff provided proof of two[4] timely adverse employment actions. (Report, at 18-21.) Specifically, Defendant reduced her job responsibilities on August 16, 2012, (*id.* at 6), and Plaintiff was terminated on January 22, 2013. (*Id.* at 7); *see Ruiz*, 609 F.3d at 491.

### 1. ADEA

With regard to Plaintiff's age discrimination claim, Magistrate Judge Maas properly found that Plaintiff proffered no facts supporting her contention that the adverse employment actions occurred under circumstances that gave rise to an inference of age discrimination. *Ruiz*, 609 F.3d at 491; (*see* Report, at 17). Plaintiff, a paralegal, did not provide any evidence suggesting that Defendant's decision to hire a younger male for a billing clerk and law clerk position with significantly different duties and responsibilities sometime between 2012 and 2013 was motivated by age. (*Id.* at 18.) Nor did Plaintiff provide any evidence that her age was a but-for cause of any

---

[4] Plaintiff also contended that Defendant failed to give her a raise or pay her commensurately with other employees during the justiciable time period, (Report, at 16), and that Defendant failed to provide her with a written job reference, even though Plaintiff requested a reference twice over a ten-month period. (*Id.* at 5, 6.) The Report properly found that for the purposes of disparate treatment analysis, Plaintiff did not meet her burden of proof to show that these incidents constitute adverse employment actions. (*See id.*, at 19, 21 n.7.)

6

of the adverse employment actions she has alleged. (*Id.* (citing *Sklar v. N.Y. Life Ins. Co.*, No. 00 Civ. 2254, 2001 WL 984724, at *5 (S.D.N.Y. Aug. 27, 2001 (finding that "mere fact" of plaintiff's age (fifty-two) does not raise inference of age discrimination)).)

Neither party objected to the Report's recommendation to grant summary judgment to Defendant on Plaintiff's ADEA discrimination claim. Having found no clear error, this Court accepts that recommendation.

## 2. TITLE VII

The Report also properly found that Plaintiff failed to establish that the adverse employment actions occurred under circumstances that give rise to an inference of discrimination on the basis of her race, color, gender, or national origin. *See Ruiz*, 609 F.3d at 491. Plaintiff offered no evidence to support her contentions that her change in job responsibilities[5] and termination were motivated by unlawful discrimination. (*See* Report, at 22.) During her deposition, Plaintiff could not name witnesses who could corroborate her discrimination claims. (*See id.*) Plaintiff's sole fact on which she hangs her case of unlawful discrimination is that she is "the only Black female employee of Jamaican ancestry" at the defendant Firm. (*See* Report, at 23.) Without more contextual information about how she came to be the only Black female employee of Jamaican ancestry working for Defendant, a rational jury could not find in Plaintiff's favor regarding an inference of discrimination. (*See id.* (citing *Risco v. McHugh*, 868 F. Supp. 2d 75, 105 (S.D.N.Y. 2012) (internal quotation marks and citations omitted)).)

---

[5] The Report did not specifically find that Plaintiff's change in duties constituted an adverse employment action cognizable under Title VII, stating that the change "may rise to the level of an adverse employment action." (*See* Report, at 21.) The Report reasoned that the reduction in Plaintiff's billable tasks may well have led to her later termination. (*Id.* at 20-21.) The Report also notes that Defendant does not dispute Plaintiff's assertion that the reorganization reduced her billable hours. (*See id.* at 20). Indeed, Defendant only addresses Plaintiff's termination, contending that Plaintiff was terminated because she generated less revenue than the only other paralegal at the firm. (*See* Def.'s Mem. at 13.)

Other than this fact, the Report properly concluded that Plaintiff merely proffered "conclusory statements that [Defendant's] actions were motivated by animus toward her race, color, gender, or national origin." (Report, at 21.) As this Circuit has recognized, "a party cannot create a triable issue of fact merely by stating in an affidavit the very proposition they are trying to prove." *Hicks*, 593 F.3d at 167. "To the extent that [Plaintiff's papers] contain bald assertions and legal conclusions[,] . . . the district court [can] properly refuse[ ] to rely on them." *Schwapp*, 118 F.3d at 111 (citations omitted). Magistrate Judge Maas found that Plaintiff failed to establish a prima facie case of unlawful discrimination under Title VII, and accordingly recommended that this Court grant Defendant's motion for summary judgment as to Plaintiff's Title VII discrimination claim. (Report, at 24, 28.)

Neither party objected to the Report's recommendation. Having found no clear error, this Court accepts that recommendation.

### B. RETALIATION

Title VII and the ADEA prohibits an employer from retaliating against employees for opposing any practice of unlawful employment discrimination. *See Littlejohn*, 795 F.3d at 315 (citing 42 U.S.C. § 2000e–3(a)). Retaliation claims, like disparate treatment claims, are analyzed using the three-part burden-shifting test. *See id.* To demonstrate a prima facie case of retaliation,

> a plaintiff must submit sufficient admissible evidence to allow a trier of fact to find: (i) conduct by the plaintiff that is protected activity . . . ; (ii) of which the employer was aware; (iii) followed by an adverse employment action of a nature that would deter a reasonable employee from making or supporting a discrimination claim; (iv) that was causally connected to the protected activity.

*Cox v. Onondaga Cty. Sheriff's Dep't*, 760 F.3d 139, 145 (2d Cir. 2014) (internal citation omitted).

Once a plaintiff establishes her prima facie case, the burden of production shifts to the employer to put forth evidence of a non-retaliatory rationale for the adverse action. *See id.* (citing

*Holt v. KMI-Continental,* 95 F.3d 123, 130 (2d Cir. 1996)). Once the defendant has done so, the plaintiff may prevail by demonstrating that the stated rationale is pretextual. *Jute v. Hamilton Sundstrand Corp.,* 420 F.3d 166, 173, 179–80 (2d Cir. 2005). The employee at all times bears the burden of persuasion to show a retaliatory motive. *Cosgrove v. Sears, Roebuck & Co.,* 9 F.3d 1033, 1039 (2d Cir. 1993).

The parties do not dispute the first three elements of Plaintiff's prima facie case of retaliation. First, Plaintiff clearly engaged in protected activity when she dually filed her EEOC and Division of Human Rights charge of discrimination on April 27, 2012. (Def.'s Rule 56.1 Statement ("Def.'s 56.1 Stmt."), ECF No. 86, at ¶ 17.) Magistrate Judge Maas properly found that both Plaintiff's termination and her reduction in responsibilities constituted an adverse employment action. (*See* Report, at 28 (referencing Report, at 21 ("The reorganization may well have created a situation in which Goldson became less valuable to the firm than [the other paralegal], and therefore, vulnerable to termination . . . [T]he reorganization of her responsibilities [] may rise to the level of an adverse employment action.")).)

### 1. CAUSATION

Defendant first objects to the Report's finding that Plaintiff was able to demonstrate causation because of the temporal proximity between her April 27, 2012 filing of the charge of discrimination and the August 16, 2012 change in her job duties. (Def.'s Objs., at 1; Report, at 29.) While the Report concluded that the nine months between Plaintiff's protected activity and her January 2013 termination "would likely pose a temporal proximity hurdle," the Report also concluded that three and a half months (at most) between the protected activity and the change in Plaintiff's responsibilities is sufficiently close in time as to demonstrate causation as part of the prima facie case. (Report, at 29.) Furthermore, the Report accurately noted that Defendant had

failed to contest the causal connection between these two events in its moving papers, which only focused on the causal relationship between the protected activity and Plaintiff's termination. (*Id.*)

Defendant further contends that when, as here, "more than three months have passed between a protected activity and an allegedly retaliatory response, the Second Circuit has deemed the evidence insufficient to raise an issue of fact concerning causation." (Def.'s Objs., at 4 (citing *Jiminez v. City of N.Y.*, 605 F. Supp. 2d 485, 528 (S.D.N.Y. 2009)).) However, the Second Circuit "has not drawn a bright line defining, for the purposes of a prima facie case [of retaliation], the outer limits beyond which a temporal relationship is too attenuated to establish causation . . . ." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010). Indeed, this Circuit has held that periods as long as eight months have been sufficiently close in time to establish causation. *See Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 45–46 (2d Cir. 1980) (eight-month gap between EEOC complaint and retaliatory action suggested a causal relationship); *see also Gorman-Bakos v. Cornell Co-op Extension of Schenectady Cty.*, 252 F.3d 545, 555 (2d Cir. 2001) (noting that five months was sufficiently proximate in time to demonstrate causation). Furthermore, at the prima facie stage, "temporal proximity [between the protected activity and the adverse action] alone may still be sufficient" to show causation. *See Smith v. Town of Hempstead Dept. of Sanitation*, 982 F. Supp. 2d 225, 232 (E.D.N.Y. 2013). This Court finds that the Report properly held that Plaintiff made out a prima facie case of retaliation.[6]

---

[6] Defendant also appears to argue that apart from timing, the Reorganization Email had no "connection whatsoever to the Plaintiff's filing of her Charge," (Objs., at 4), and contest "Plaintiff's reliance on the mere existence of the Reorganization Email to bolster her temporal proximity argument to establish causation." (*Id.* at 5.) This argument is conclusory and without merit, as Plaintiff's burden at the prima facie stage is *de minimis*. *Tomassi v. Insignia Fin. Grp., Inc.*, 478 F.3d 111, 114 (2d Cir. 2007). Furthermore, "[a] showing of causation 'tend[s] to collapse as a practical matter under the *McDonnell Douglas* framework' with a showing of pretext," as Plaintiff has made here. *Orlando v. BNP Paribas N.*

## 2. PRETEXT

Defendant next contends that the Report's finding that Plaintiff has sufficiently established pretext as to her retaliation claim is improper because the Report found that Plaintiff failed to establish pretext as to her Title VII claim. However, as courts in this Circuit have routinely found that a plaintiff's retaliation claim may proceed while granting summary judgment on a discrimination claim. An adverse employment action that may not be discriminatory may still be retaliatory, and therefore unlawful. *See, e.g., Orlando*, 2015 WL 6387531, at \*12; *Chan v. Donahoe*, 63 F. Supp. 3d 271, 300 (E.D.N.Y. 2014); *Ramos v. Marriott Int'l, Inc.*, 134 F. Supp. 2d 328, 351 (S.D.N.Y. 2001); *Kornblatt v. Beth Israel Med. Ctr.*, No. 97 CIV. 8630, 1998 WL 483457, at \*4 (S.D.N.Y. Aug. 17, 1998).

Here, Defendant claims that the purpose of the Reorganization Email was "to limit firm expenses" and "clarify to attorneys and non-attorney staff the parameters of paralegal and staff responsibilities," (Objs., at 2). There exists, however, a genuine issue of material fact as to pretext, as the Report found. (Report, at 29.) "Plaintiffs may establish pretext and thereby successfully oppose summary judgment, . . . by demonstrat[ing] weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nondiscriminatory reason for its action." *Ramos*, 134 F. Supp. 2d at 343 (internal quotation marks and citations omitted). Here, Plaintiff notes that Defendant's managing partner and the author of the Reorganization Email, Gerald Ryan, never responded to her email inquiries about her new responsibilities. (Pl.'s Aff. in Opp. to Def.'s Mot. for Summ. J. ("Pl.'s Aff."), ECF No. 94, at ¶ 5; Pl.'s Aff., Ex. C, at 1.) Defendant claims that Plaintiff's termination was "part of a broad cost reduction plan in an effort to improve the

---

*Am., Inc.*, No. 14 CIV. 4102, 2015 WL 6387531, at \*13 (S.D.N.Y. Oct. 22, 2015) (internal quotation marks and citation omitted).

firm's profitability." (Def.'s Mem., at 13.) However, Defendant fails to address how the Reorganization Email was part of that effort, or if that effort was even in place in August 2012, when Ryan sent the e-mail. Even if Defendant argued that the email was part of a firm-wide "cost-saving" effort, (*see* Report, at 25 (citing Ryan Decl., ECF No. 87, at ¶ 9), Defendant has not proffered any evidence showing that emails were sent about secretarial responsibilities or about attorney responsibilities in the New York office. Nor does Defendant demonstrate how making a salaried employee, such as Plaintiff, do less billable work, could save Defendant money. In fact, reducing Plaintiff's billable hours would have saved a client money, but not Defendant. Taken together, the circumstances raise an inference that there was no other purpose to the email that applied only to Plaintiff than to set up a pretext for retaliatory motives. Therefore, Magistrate Judge Maas properly recommended that Defendant's motion for summary judgment be denied as to Plaintiff's retaliation claim. (*See* Report, at 30.)

### III. CONCLUSION

Magistrate Judge Maas' Report and Recommendation is adopted. Defendant's motion for summary judgment as to Plaintiff's Title VII and ADEA discrimination claims is GRANTED. Defendant's motion for summary judgment on Plaintiff's retaliation claim is DENIED.

The Clerk of Court is directed to close the motion at ECF No. 84.

Dated: New York, New York
March 24, 2016

SO ORDERED.

*/s/ George B. Daniels*

GEORGE B. DANIELS
United States District Judge